UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NICOLE B.,

                  Plaintiff,                    **DECISION AND ORDER**

      v.
                                         1:23-CV-00900 EAW

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

_____

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Nicole B. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").  (Dkt. 1).  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).  Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 6; Dkt. 8), and Plaintiff's reply (Dkt. 9).   For the reasons discussed below, the Commissioner's motion (Dkt. 8) is granted, and Plaintiff's motion (Dkt. 6) is denied.

**BACKGROUND**

Plaintiff protectively filed her applications for DIB and SSI on June 25, 2020.  (Dkt. 5 at 112-13).[1]  In her applications, Plaintiff alleged disability beginning May 18, 2016, due to degenerative disc disease, neuropathy in her legs, post-traumatic stress disorder (PTSD), ADHD, panic attacks, anxiety, depression, and substance abuse.  (*Id.* at 79, 99).  Plaintiff's applications were initially denied on February 5, 2021.  (*Id.* at 151-60).  A telephone hearing was held before administrative law judge ("ALJ") John Benson on February 11, 2022.  (*Id.* at 44-77).  On April 26, 2022, the ALJ issued an unfavorable decision.  (*Id.* at 21-38).  Plaintiff requested Appeals Council review; her request was denied on July 7, 2023, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 5-10). This action followed.

**LEGAL STANDARD**

**I.     District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a

finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. §§ 404.1520(d), 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. §§ 404.1509, 416.909, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. §§ 404.1520(f), 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. §§ 404.1520(g), 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

- 4 -

## DISCUSSION

### I.  The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920.  Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2026.  (Dkt. 5 at 26).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since May 18, 2016, the alleged onset date.  (*Id*. at 27).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "Degenerative Disc Disease; Obesity; Anxiety Disorder; Depressive Disorder; Post-Traumatic Stress Disorder; Attention Deficit Hyperactivity Disorder; and Polysubstance Abuse Disorder."  (*Id.*).  The ALJ further found that Plaintiff's medically determinable impairments of gastroesophageal reflux disease, diabetes, and migraines were non-severe. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*).  The ALJ particularly considered the criteria of Listings 1.15, 1.16, 12.04, 12.06, 12.11, and 12.15 in reaching his conclusion, as well as considering the effect of Plaintiff's obesity as required by Social Security Ruling ("SSR") 19-2p.  (*Id.* at 27-29).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that Plaintiff:

> can occasionally climb stairs; never climb ladders; occasionally balance, stoop, crouch, kneel, and crawl; must avoid concentrated exposure to

> vibration; no exposure to workplace hazards such as unprotected heights and
> dangerous moving machinery; she is limited to performing simple tasks; she
> may have no interaction with the public as part of her required job duties;
> and have occasional interaction with coworkers and supervisors.

(*Id.* at 29).   At step four, the ALJ found that Plaintiff was unable to perform any past

relevant work.  (*Id.* at 36).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to

conclude that, considering Plaintiff's age, education, work experience, and RFC, there

were jobs that exist in significant numbers in the national economy that Plaintiff could

perform, including the representative occupations of laundry worker, cleaner

housekeeping, and garment sorter.  (*Id.* at 37).   Accordingly, the ALJ found that Plaintiff

was not disabled as defined in the Act.  (*Id.* at 38).

## II.    <u>The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error</u>

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1)

the ALJ failed to build a logical bridge between the evidence and the RFC when the ALJ

failed to reconcile limitations from medical opinions he found to be persuasive with his

RFC finding, and (2) the ALJ failed to properly evaluate the opinions of Plaintiff's treating

providers.  (Dkt. 6-1 at 1, 13-24).   The Court has considered each of these arguments and,

for the reasons discussed below, finds them without merit.

### A.    <u>Assessment of the RFC</u>

Plaintiff's first argument is that the ALJ failed to build a logical bridge between his

RFC findings and the evidence.  (*Id.* at 13-20).   In deciding a disability claim, an ALJ is

tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is]

consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *id.*, an ALJ is not a medical professional, and therefore he "is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted).

However, at bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)).   In arriving at the RFC, the ALJ's reasoning "must always be sufficiently discernible as to allow a reviewing court to ensure that the ALJ employed the proper standards and rendered a decision supported by substantial evidence." *Gail F. v. Comm'r of Soc. Sec.*, No. 21-CV-120-FPG, 2022 WL 17578465, at \*4 (W.D.N.Y. Dec. 12, 2022) (quotations and citation omitted).

Plaintiff argues that the ALJ failed to include in the RFC certain limitations assessed by consultative examiners Hongbiao Liu, M.D., and Todd Deneen, Psy.D., despite the ALJ's finding that their opinions were persuasive.  (Dkt. 6-1 at 13-20).  The Court turns

first to the opinion offered by Dr. Liu, who assessed Plaintiff's physical functioning.  Dr.

Liu examined Plaintiff on December 23, 2020, and opined that Plaintiff had "mild to

moderate limitation for prolonged walking, bending, kneeling, squatting, stair climbing,

carrying heavy weights, and prolonged sitting, and standing." (Dkt. 5 at 741-44).  The ALJ

found this opinion to be persuasive, including because it was both consistent with and

supported by the evidence of record:

> It was consistent with the evidence of record, which reflected at most moderate pain symptoms.  For example, it was often noted that the claimant was continuing to do well with improved physical health.  Furthermore, the claimant reported only mild to moderate limitation for prolonged walking, bending, kneeling, squatting, and prolonged sitting and standing.  Moreover, this opinion is supported by the evidence of record. For example, Dr. Liu's opinion is consistent with his examination notes which reflected no acute distress, normal gait, normal stance, and can heel/toe walk with only moderate difficulty due to lower back pain.  She further could squat 25% of full range due to back pain and obesity, needed no help getting on and off exam table, and was able to rise from a chair without difficulty.  She also had a full range of motion and strength in her shoulders, forearms, wrists, hips, and knees.  Additionally, Dr. Liu's findings were supported by treatment notes which often reflected that she was healthy appearing, had a normal gait, normal range of motion, and tenderness on palpitation of the lower back.  Although this opinion does not provide a specific functional limitation, it nonetheless supports at most moderate physical limitation.

(*Id*. at 33 (citations omitted)).

Dr. Deneen also examined Plaintiff on December 23, 2020, and assessed her mental

functioning.  Dr. Deneen opined that Plaintiff had no limitations in the following areas of

mental functioning: understanding, remembering, and applying simple directions and

instructions; understanding, remembering, and applying complex directions and

instructions; using reason and judgment to make work-related decisions; interacting

adequately with supervisors, co-workers, and the public; sustaining concentration and

performing a task at a consistent pace; sustaining an ordinary routine and regular attendance at work; and awareness of normal hazards and taking appropriate precautions. (*Id*. at 747-50). Plaintiff had mild limitations for maintaining personal hygiene and appropriate attire, and moderate limitations for regulating emotions, controlling behavior, and maintaining well-being. (*Id*. at 750). The ALJ explained that Dr. Deneen's opinion was persuasive, including because:

> It was consistent with the evidence of record, which often reflected moderate mental health symptoms that improved with treatment. For example, the record often reflected that [Plaintiff] was doing well with improving mental health symptoms, interacting well with others, and her medications kept her focused. Mental health treatment sessions also consistently noted that she had no significant mental health changes. Moreover, this opinion was supported by the evidence of record. Dr. Deneen's examination was consistent with her opinion which reflected that the claimant was cooperative, had adequate social skills, adequate hygiene, normal posture, appropriate eye contact, coherent thought process, was oriented, had intact attention and concentration, intact memory, appropriate general fund of information, good insight, and fair judgment. Moreover, the claimant noted that she gets along with friends and family, and she is able to perform hygienic activities. The claimant noted that she is able to shop, complete laundry, clean, and cook. Furthermore, her opinion was consistent with the claimant's treatment notes which often reflected that she was cooperative, pleasant, had an appropriate mood and affect, organized thought process, oriented, intact or only slightly impaired attention and concentration, intact memory, and intact to fair insight and judgment. Although this opinion was not adopted verbatim in the above residual functional capacity assessment, it nonetheless reflects at most moderate mental health limitations.

(*Id*. at 34-35 (citations omitted)).

Here, in light of the opinions offered by Drs. Liu and Deneen, it is clear to the Court how the ALJ arrived at both the mental and the physical RFC. Turning first to the physical RFC, the RFC for light work with additional physical limitations is supported by Dr. Liu's opinion that Plaintiff has mild-to-moderate limitations for prolonged walking, bending,

kneeling, squatting, stair climbing, carrying heavy weights, and prolonged sitting and standing.  It is well-settled that an RFC for light work is consistent with mild-to-moderate physical limitations.  *See, e.g., Monserrate v. Comm'r of Soc. Sec.*, No. 1:20-CV-700-DB, 2021 WL 2587249, at *5 (W.D.N.Y. June 24, 2021) ("an opinion of mild-to-moderate limitations in physical functioning is consistent with the demands of light work" (collecting cases)).  While Plaintiff argues that remand is required due to the ALJ's failure to explain his reasoning for not interpreting a conflict between six hours of standing and walking (as may be required for light work), and a mild to moderate limitation in prolonged walking, prolonged sitting, and standing (*see* Dkt. 6-1 at 18), that argument is not supported by the law.  Rather, "courts within the Second Circuit have found that a doctor's assessment of 'mild' and 'moderate' limitations supportive of an RFC for light work," including with respect to standing and sitting.  *See, e.g., Bethany A. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1267 (WBC), 2022 WL 170405, at *4 (W.D.N.Y. Jan. 18, 2022) (citing *White v. Berryhill*, 753 F. App'x 80, 82 (2d Cir. 2019) (physician's opinion that plaintiff had moderate limitations for standing, sitting, and performing other activities supported an RFC for light work) *and Henderson v. Saul*, 788 F. App'x 86, 87 (2d Cir. 2019) (substantial evidence supporting RFC determination allowing for light work includes medical opinion evidence of mild-to-moderate limitations for prolonged walking)).

Further, the mental RFC—which limits Plaintiff to simple work, with limited contact with others—is supported by the opinion offered by Dr. Deneen that Plaintiff has no limitations in several categories of mental functioning, and only mild limitations for maintaining personal hygiene and appropriate attire, and moderate limitations for

regulating emotions, controlling behavior, and maintaining well-being.  Plaintiff argues that the ALJ failed to explain how moderate limitations in regulating emotions, controlling behavior, and maintaining well-being were incorporated into the RFC finding.  (*See* Dkt. 6-1 at 15).  It is well-settled that an RFC for simple work with limited interaction with others adequately accounts for mild-to-moderate mental functional limitations.  *See Bethany A.*, 2022 WL 170405, at *1, 5 (RFC limiting plaintiff to simple, repetitive tasks with additional social limitations was sufficient to accommodate moderate limitations assessed by consultative examiner, including for regulating emotions, controlling behavior, and maintaining well-being); *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 12 (W.D.N.Y. 2021) ("[T]he ALJ's limiting Plaintiff to occasional interaction with supervisors, coworkers and the general public, as well as low stress work . . . is supported by the opinion of Dr. Deneen, who found that Plaintiff would be moderately limited in interacting with others and regulating her emotions, behavior, and well-being").  Plaintiff points to no evidence that further limitations in the RFC are necessary.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018).

Plaintiff cites to *Laura B. v. Comm'r of Soc. Sec.*, No. 1:21-cv-1309-DB, 2023 WL 8188730 (W.D.N.Y. Nov. 27, 2023), in support of her argument that the ALJ failed to incorporate into the RFC moderate limitations for regulating emotions, controlling behavior, and maintaining well-being.  (*See* Dkt. 6-1 at 15).  In that case, the ALJ failed to incorporate into the RFC, and further failed to explain his failure to incorporate into the RFC, the plaintiff's mild-to-moderate limitations for mental functioning, including for regulating emotions, which were assessed by the consultative examiner.  *Laura B.*, 2023

WL 8188730, at *4.  The only mental limitation included in the RFC was that "[t]he individual can have no more than occasional interaction with supervisors, coworkers, and the general public," and therefore the RFC did not account for many of the limitations assessed by the consultative examiner and others, including the plaintiff's moderate limitations in the ability to understand, remember, and apply complex directions and instructions, interact adequately with supervisors, coworkers, and the public, and regulate emotions, control behavior, and maintain wellbeing.  *Id.* at *2-4.  The court explained that "[d]espite finding these opinions persuasive, the only mental limitation included in the RFC was 'occasional interaction with supervisors, coworkers, and the general public.'"  *Id*. at *4.  Here, Dr. Deneen did not find that Plaintiff had moderate limitations in several of these categories of mental functioning and, further, in addition to limiting Plaintiff to occasional interaction with co-workers and supervisors, the ALJ limited Plaintiff to simple tasks, and to no interaction with the public.  Plaintiff's moderate limitations are plainly accommodated by the RFC, and the ALJ's conclusion is also supported by Plaintiff's own testimony that she is uncomfortable and has difficulty being in public places, around a lot of people, and interacting with others.  (*See* Dkt. 5 at 66).  Accordingly, the Court does not find *Laura B*. to be persuasive in this instance.

In sum, both the physical and mental RFC are supported by substantial evidence in the record, including the opinion evidence offered by Dr. Liu and Dr. Deneen.  The ALJ is not required to adopt any one medical opinion in its entirety, *see Matta*, 508 F. App'x at

56, and it is clear to the Court how the ALJ arrived at the assessed RFC.  Accordingly, remand is not required on this basis.

### B.   <u>Evaluation of Opinion Evidence</u>

Plaintiff's second and final argument is that the ALJ failed to properly evaluate the opinions offered by Plaintiff's treating providers, including Dessialis Cruz, PA, and Anthony Burdo, M.D.  (Dkt. 6-1 at 20-25).  Specifically, Plaintiff argues that the ALJ's statement that Plaintiff reported greater capabilities than those assessed by PA Cruz and Dr. Burdo was not supported by the record, and also that the ALJ failed to credit the consistency between the opinions before he discounted them.  (*Id*. at 21-22).

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections.  *Id*.  Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other

factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at §§ 404.1520c(c), 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at §§ 404.1520c(a), 416.920c(a).  With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1).  With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record.  *Id*. at §§ 404.1520c(b), 416.920c(b).  "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted).  Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical

source's opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ may—but is not required to—explain how he considered the remaining factors.  *Id.*

Here, the ALJ discussed the opinions offered by both PA Cruz and Dr. Burdo at length.  PA Cruz opined that Plaintiff was very limited in her ability to lift and carry; moderately limited in her ability to walk, stand, push, pull, bend, and use her hands; moderately limited in her ability to maintain attention and concentration, make simple decisions, and maintain basic standards of personal hygiene and grooming, with no limitations for her ability to understand and remember instructions, carry out instructions, interact with others, and maintain socially appropriate behavior.  (*See* Dkt. 5 at 35; *see also id.* at 1327-28).  The ALJ found that this opinion was "partially persuasive":

> In terms of the claimant's physical impairments, treatment notes often reflected that she was healthy appearing, had a normal gait, normal range of motion, and tenderness on palpation of the lower back.  Moreover, during a consultative examination, examination notes reflected no acute distress, normal gait, normal stance, and can heel/toe walk with only moderate difficulty due to lower back pain.  She could squat 25% of full range due to back pain and obesity, needed no help getting on and off exam table, and was able to rise from a chair without difficulty.  Additionally, in terms of her mental health, treatment notes often reflected that she was cooperative, pleasant, had an appropriate mood and affect, organized thought process, oriented, intact or only slightly impaired attention and concentration, intact memory, and intact to fair insight and judgment.  However, the significant lifting and carrying limitation in this opinion is not supported.  For instance, during the consultative examination, it was noted that she had a full range of motion and strength in her shoulders, forearms, wrists, hips, and knees (9F/4).  Moreover, the above mental limitations for personal hygiene and grooming are not supported.  For example, during a consultative examination, it was noted that the claimant had adequate hygiene.  Although the undersigned did not adopt verbatim the limitations found in this opinion in the above residual functional capacity, this opinion nonetheless largely

supports at most moderate limitations outside of the carrying, lifting, and hygiene limitations.

(*Id*. at 35-36 (citations omitted)).

With respect to Dr. Burdo, he opined that Plaintiff could walk for approximately two blocks before needing to rest due to pain, sit or stand for only five minutes at one time before changing positions; and sit for about two hours and stand or walk for about two hours. Plaintiff would need unscheduled breaks every two hours, and she could rarely lift or carry less than ten pounds. Plaintiff could grasp, turn, and twist objects for only five percent of the day, and she has no ability to finely manipulate. Plaintiff would be absent more than four days per month. (*Id*. at 36; *see also id*. at 1332-36). The ALJ found that this opinion was not persuasive:

> It was not consistent with the evidence of record, which reflected at most moderate pain symptoms. For example, it was often noted that the claimant was continuing to do well with improved physical health. Furthermore, the claimant reported only mild to moderate limitation for prolonged walking, bending, kneeling, squatting, and prolonged sitting and standing. Moreover, this opinion is not supported by the evidence of record. For example, treatment notes often reflected that she was healthy appearing, had a normal gait, normal range of motion, and tenderness on palpitation of the lower back. Moreover, during a consultative examination, examination notes reflected no acute distress, normal gait, normal stance, and can heel/toe walk with only moderate difficulty due to lower back pain. She could squat 25% of full range due to back pain and obesity, needed no help getting on and off exam table, and was able to rise from a chair without difficulty. She also had a full range of motion and strength in her shoulders, forearms, wrists, hips, and knees. She further had intact dexterity in her hands and fingers with full grip strength.

(*Id*. at 36 (citations omitted)).

Plaintiff's contention that the ALJ erred in considering the opinions of her treating providers is not supported by the record. The ALJ engaged in a lengthy discussion with

respect to his evaluation of the opinions offered by PA Cruz and Dr. Burdo, including by specifically discussing the supportability and consistency factors.  Accordingly, the Court finds that the ALJ's assessment of the opinions offered by PA Cruz and Dr. Burdo to be proper and in compliance with the applicable regulations.

Plaintiff argues that the ALJ mistakenly relied on Plaintiff's report that she had "only mild to moderate limitation for prolonged walking, bending, kneeling, squatting, and prolonged sitting and standing" in assessing the opinions offered by PA Cruz and Dr. Burdo.  (Dkt. 6-1 at 21-22; *see also* Dkt. 5 at 35-36).  Plaintiff contends that this was not her own report of her functioning, but rather was an assessment made by Dr. Liu.  (Dkt. 6-1 at 22).

To the extent the ALJ was mistaken about the origin of the report of Plaintiff's functioning with respect to her ability to walk, bend, kneel, squat, sit, and stand, the Court finds any such error does not render the RFC unsupported by substantial evidence.  The ALJ did not rely solely on this purported report from Plaintiff in finding the opinions offered by Dr. Burdo and PA Cruz to be not persuasive or partially persuasive.  As noted above, the ALJ engaged in a detailed discussion of the opinions offered by PA Cruz and Dr. Burdo, and he relied on the evidence in the record as a whole—not just Plaintiff's reports of her limitations—in assessing these opinions.  (*See* Dkt. 5 at 35-36).  Further, the evidence as a whole supports that Plaintiff has only mild to moderate physical limitations, and the ALJ explained how he arrived at this conclusion in the written determination.  (*See, e.g.*, *id*. at 31 (discussing examination notes reflecting no acute distress, and that Plaintiff had a normal gait, normal stance, and could heel/toe walk with only moderate difficulty);

*id*. at 33 (discussing treatment notes reflecting that Plaintiff was healthy appearing, had a normal gait, normal range of motion, and tenderness on palpitation of the lower back)).  In other words, that Plaintiff had mild to moderate limitations for prolonged walking, bending, kneeling, squatting, and prolonged sitting and standing is supported by the record, independent of her own reports of her functioning.

Plaintiff also argues that the ALJ failed to recognize the consistency between the opinions offered by PA Cruz and Dr. Burdo.  (Dkt. 6-1 at 22).  As noted above, the consistency of a medical opinion is one of the most important factors for the ALJ to consider when assessing medical opinion evidence.  Here, while the ALJ did not directly compare these two opinions, it is plain from the written determination that the ALJ considered how and whether the opinions offered by PA Cruz and Dr. Burdo were consistent.  Specifically, the ALJ first considered PA Cruz's opinion, and then considered Dr. Burdo's opinion immediately thereafter.  (Dkt. 5 at 35-36).  Further, the ALJ engaged in a careful analysis of each opinion, and considered both the supportability and consistency factors in assessing them.  Based on the ALJ's careful analysis of the opinions, it is plain to the Court that the substance of the regulation was not traversed.  *See, e.g., Tiffany A. J. v. Comm'r of Soc. Sec*., No. 1:20-cv-01903 (JJM), 2023 WL 2202628, at *5 (W.D.N.Y. Feb. 24, 2023) ("Although ALJ Cascio does not directly compare Dr. Coniglio's opinion with Dr. Huckell's, or state that he finds the lifting restriction in Dr. Coniglio's opinion inconsistent with Dr. Huckell's, his reasoning is clear because he

discusses Dr. Coniglio's opinion in the same paragraph as, and immediately after, his

analysis of Dr. Huckell's opinion.").  Accordingly, remand is not required on this basis.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the

pleadings (Dkt. 8) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 6)

is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: August 12, 2024
       Rochester, New York